[No. 9978. Department Two. February 28, 1912.]

## GUSTAV ULRICH, Appellant, v. PATEROS WATER DITCH COMPANY et al., Respondents.[1]

WATERS—IRRIGATION—WATER CONTRACT — CONSTRUCTION — AGREEMENT RUNNING WITH LAND. An agreement for water for irrigation, calling for a certain number of miners' inches for specific tracts of land, which was binding on each parcel of land separate and apart from the others, the conditions to be binding upon heirs and assigns, runs with the land, and places a purchaser of a tract in the situation of the original contractee.

CORPORATIONS — REPRESENTATION — CONTRACTS — STOCKHOLDERS—RATIFICATION BY CORPORATION. Where, in consideration of 98 per cent of the stock of an irrigation company, the purchaser entered into an agreement to furnish water for specified tracts of land, and agreed to execute a water deed therefor as soon as he was made president of the corporation, the company ratifies the contract by furnishing water and receiving payments therefor under the contract.

WATERS — IRRIGATION—CONTRACTS—"MINERS INCHES"—PAROL EVIDENCE—CERTAINTY—SPECIFIC PERFORMANCE. A contract for a certain number of "miners' inches" of water to be taken from an irrigation ditch is ambiguous, and may be shown by parol evidence to mean in that locality a quantity of water which would flow through an orifice one-inch square under at least a four-inch pressure; and when so explained, is sufficiently definite to admit of specific performance.

WATERS—IRRIGATION—WATER CONTRACTS — BREACH — MEASURE OF DAMAGES. Upon specific performance of a contract to furnish plaintiff five miners' inches of water, to be taken from a ditch at a point most convenient for the irrigation of plaintiff's land, the measure of plaintiff's damages should be interest on his investment at the legal rate from the date of the refusal to furnish water, less the maintenance fee, rather than the remote and speculative profits that he might have made from the cultivation of the land, where it

[1]Reported in 121 Pac. 818.

appears that his land was some distance from the ditch, the lands were never cultivated and the plaintiff had not constructed his diverting ditches or acquired the right to do so.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered March 27, 1911, upon findings in favor of the defendants, dismissing an action for specific performance. Reversed.

*Peter McPherson*, for appellant.

*Smith & Gresham*, for respondents.

MOUNT, J.—Action for specific performance of a contract. Upon a trial of the case, the court denied the plaintiff any relief, and dismissed the action. Plaintiff has appealed.

It appears that, prior to October, 1905, one C. J. Steiner had constructed a ditch or canal, about six miles in length, along the Methow and Columbia rivers, which ditch extended eastward up and along the low lands of the Columbia to a point about one-fourth of a mile from lots 1 and 2, section 29, township 30, north, range 24 east, in Okanogan county. This land at that time was government land, but had been filed upon by Mr. Steiner. Water was taken out of the Methow river, and was conveyed in the ditch to the lands lying along the canal, for purposes of irrigation. After the completion of this ditch, Mr. Steiner organized a corporation known as the Pateros Water Ditch Company, to which he conveyed the ditch, with all his rights and obligations. At that time, Mr. Steiner held ninety-eight shares of the stock of the corporation, being all of the stock except two shares. Thereafter, on October 28, 1905, Mr. Steiner sold and transferred all his shares of stock in the corporation to Mr. W. A. Sexsmith and Nellie E. Sexsmith, in consideration of an agreement entered into, as follows:

"For and in consideration for a transfer of 98 shares in the Pateros Water Ditch Company, of Pateros, Okanogan county, Washington, by C. J. Steiner, party of the first part, to Wm. A. Sexsmith and Nellie E. Sexsmith, his wife, par-

ties of the second part, Wm. A. Sexsmith and Nellie E. Sexsmith, his wife, agree to furnish 57 miners' inches of water for domestic and irrigation purposes during the irrigation season of each year, which shall begin with the 1st day of May, 1906, and continue until the 1st day of October, 1906, and each year thereafter. May 1st to October 1st of each year shall constitute the irrigation season. This water to be furnished from the Pateros water ditch through laterals or measuring boxes put in by the Pateros Water Ditch Company, at such a point as is most convenient to take the water from the ditch to put it on the hereafter described land, this water to be furnished on the following described lands, to wit: 7 miners' inches to be furnished for and on the lots 1 and 2, sec. 34, and lot 4, sec. 27, township 30, R. 23 E., W. M.; 35 miners' inches for and on the south one-half northwest one-quarter, northwest one-quarter of the southwest one quarter and lot 5. All in section 36, township 30, R. 23, E. W. M. 10 miners' inches for and on lots 4 and 5 to be used on what is now known as the East Steiner tract. All in sec. 31, township 30, R. 24, E. W. M. 5 miners' inches for and on lots 1 and 2, sec. 29, township 30, R. 24, E. W. M. All of these tracts being under the Pateros water ditch and in Okanogan county, state of Washington. Said Wm. A. Sexsmith further agrees to exercise all due diligence in keeping ditch bank in good repair, and sufficiently high to prevent any danger of breaks in said ditch to the damage of the above described lands. But if after all due diligence has been exercised said ditch bank shall break either by forceable entry or leaks in banks, or any other unavoidable cause, said C. J. Steiner waives all claims for damage from said Pateros Water Ditch Company. Said Wm. A. Sexsmith also reserves the right to cut off the water for general or special repairs but agrees to restore it as speedily as possible. C. J. Steiner, party of the first part, agrees to pay said Pateros Water Ditch Company, at Pateros, Washington, a maintenance fee of $1.50 per miners' inch of water each year, being the sum of $85.50 per year. This maintenance fee to become due and payable at Pateros, Washington, on the first Monday in May of each year, beginning with May, 1906, and each year thereafter. If said maintenance fee is not paid as above described, then and in that case the Pateros Water Ditch Company shall have the right to cut off the

water supply until such a time as when the maintenance is paid. If the said maintenance fee is not paid before six months after the first Monday in May of each year the Pateros Water Ditch Company shall have the right to cancel the water on such a tract as said maintenance fee has not been paid in the above specified time. The above conditions however shall not be binding as a whole but on each parcel of land separate and apart from the other, and only such a tract as fails to meet the above conditions are subject to these conditions. Said W. A. Sexsmith further agrees to give a regular water deed to furnish water for the above described land as soon as he is elected president of the Pateros Water Ditch Company, and under the same conditions as herein provided. This deed is to be the regular water deed same as is furnished others along the ditch. Deed, however, to embody the conditions of this contract. Wm. A. Sexsmith further agrees to allow to be put into the Pateros water ditch wheels or any device whereby water may be lifted and put on lands above said ditch, not to interfere with the building or repair of said ditch. Said Wm. A. Sexsmith agrees to allow this water to be taken from said ditch for as much land as may be watered in this way for the regular maintenance fee of $1.50 per acre for the water for as much land on the aforesaid described lands now owned by C. J. Steiner for such irrigation season; these conditions to be binding on heirs and assignees."

The contract was duly signed, and filed for record in the office of the county auditor. Thereafter Mr. Steiner paid to the Pateros Water Ditch Company the maintenance fee of $1.50 per miners' inch for the years 1906-7, upon all of the lands described in the contract. In the year 1907, Mr. Steiner relinquished his filing upon lots 1 and 2 of section 29, township 3, range 24 E., W. M., to the plaintiff, and deeded to him the water right to five inches of water to be used upon that tract of land. Thereafter, for the years 1908-9, the plaintiff tendered the maintenance fee of $7.50 for each year to Mr. Sexsmith, who was then manager of the water company, and demanded that the water be furnished for the five acres of land capable of irrigation. Both the tender and the

demand were refused. Thereafter this action was begun for specific enforcement of the contract and for damages.

The trial court was apparently of the opinion that the contract was one made by a stockholder of the corporation, and. for that reason could not be specifically enforced against the corporation; and also that, even if the contract had been ratified by the corporation, it could not be specifically enforced because the amount of water was described in "miners' inches," which was too indefinite and uncertain to justify specific performance; and also, since specific performance could not be enforced, the plaintiff must seek his damages in an action at law. It is apparent that the plaintiff in this action occupies the same relation to the contract, in so far as it applies to the land purchased by him from Mr. Steiner, as Mr. Steiner himself would occupy had he not sold the land and water right to plaintiff, because the contract provides that the conditions thereof shall be binding "on each parcel of land separate and apart from the other," and that "these conditions shall be binding upon heirs and assignees," which indicates clearly that the conditions run with the land and are not personal to Mr. Steiner.

It is also apparent that the contract was made by Mr. Sexsmith and wife as stockholders. But it is clear that Mr. Sexsmith and wife obtained the stock for the purpose of managing the affairs of the corporation, for it is agreed that Mr. Sexsmith shall execute a deed as soon as he is elected president, and the whole context of the contract shows that he was purchasing substantially all of the stock of the corporation with the intention of carrying on the business of the corporation. The contract was entered into for the benefit of the corporation as well as for the benefit of the owners of the land. The contract was in line with the purposes for which the corporation was organized. While it is, no doubt, true that a stockholder as such may not enter into a contract which will bind the corporation of which he is a stockholder, nevertheless, if the corporation adopts and ratifies the con-

tract by accepting the benefits thereof, it will be bound by the obligations of such contract. 3 Cook, Corporations (6th ed.), § 707; *Chilcott v. Washington State Colonization Co.,* 45 Wash. 148, 88 Pac. 113.

The trial court was of the opinion that the corporation did ratify the contract, and there is little room for doubt upon that question, because it was shown that, after Mr. Sexsmith became the managing officer thereof and knew of the contract, payments were made to and received by the corporation for furnishing water upon all the land described in the contract, including the land in question. We are satisfied, therefore, that the contract became a contract of the corporation by ratification, and that the corporation was bound by its terms.

The trial court was of the opinion that the term "miners' inch," as used in the contract, was indefinite and meaningless where no method of measurement was provided for therein, and for that reason denied specific performance. In *Longmire v. Smith,* 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308, this court said:

"The term 'miners' inch' cannot be definite, without the specification of the head or pressure, and the witnesses continually vary when speaking of the pressure in the 'miners' inch.' "

But it was also said in that case:

"The fact that he [plaintiff] did not describe a definite measurement of what he used, and that there was no clear and satisfactory proof showing the amount required, does not deprive him of his rights."

The contract in this case does not define the pressure. The term "miners' inch," as used therein, is no doubt ambiguous. In such cases, the rule is that oral evidence may be received to explain what the parties meant by the use of such terms. Such evidence was introduced in this case, and is clear to the effect that, at the time the contract was made and in that locality, it was commonly understood that the

term "miners' inch," as applied to the measurement of water, meant a quantity of water which will flow through an orifice one inch square under a four-inch pressure; that a four-inch pressure means that the head of water stands four inches above the top of the orifice. There was no dispute whatever upon this definition. Some of the witnesses stated:

"A miners' inch of water . . . is a body of water . . . taken . . . through an opening an inch square under a four-inch pressure or six in that particular locality. Some understand six and some four."

But no witness put the pressure less than four inches. It is perfectly apparent, therefore, that the parties to this contract intended the term "miners' inch" to mean the quantity of water which would flow through an orifice one inch square under at least a four-inch pressure. The evidence leaves no doubt upon that question. The contract in that respect is therefore not uncertain, and we are satisfied that it should be specifically enforced.

Appellant contends that he is entitled to substantial damages. Much testimony was offered to the effect that the plaintiff intended to plant the land to orchard, and that such orchard would now be very valuable. He also offered evidence to the effect that the amount of his profits would have been large if he had planted the land to alfalfa or other crops, and he contends that the measure of his damages is the value of the crops which he might have produced with water if the defendants had furnished it as they had agreed to do. We regard these items of damages as entirely too speculative and remote. In the first place, the lands were not planted to orchard or to crops of any kind, except perhaps a small garden for plaintiff's personal use. Again, it is by no means certain that the plaintiff would have utilized the water upon his land. It appears that the terminus of the ditch is about one quarter of a mile from the nearest point to plaintiff's land, and fully one-half mile from the land which he desires to irrigate. The contract provides:

"This water to be furnished from the Pateros water ditch through laterals or measuring boxes put in by the Pateros Water Ditch Company at such point as is most convenient to take water from the ditch to put it on the hereinafter described land."

In view of the fact that this ditch was a completed structure at the time the contract was entered into, and in view of the fact that the Pateros Water Ditch Company does not agree to carry the water to the plaintiff's land, but agrees only to put measuring boxes at such point as is most convenient to take the water from the ditch, it is apparent that, in order to obtain water, the plaintiff must construct a ditch the distance named across private property of an adjoining owner, across a state road, and across a railroad right of way. It does not appear that any right to do so has ever been obtained.

If we may assume that the plaintiff was not required to construct his ditches, or to obtain the right to do so after defendants refused the water, we think a just measure of damage would be interest on his investment at the legal rate rather than the remote and speculative damages which he demands. This would be interest on $500 at six per cent per annum, since March 13, 1908, until final judgment is entered, less the maintenance fee for three years, or up to 1912. The judgment of the lower court is therefore reversed, and the cause remanded with directions to enter a decree requiring the defendants to furnish water in an amount of five miners' inches as above stated, and to construct a measuring box at or near the eastern terminus of the ditch at such point as may be designated by the plaintiff; and also to enter a judgment for damages as above stated, together with costs of the action.

Dunbar, C. J., Fullerton, Morris, and Ellis, JJ., concur.