[No. 17261.  Department Two.  November 18, 1922.]

M. R. COLMAN *et al., Appellants*, v. FRANK WATERHOUSE & COMPANY, *Respondent.*[1]

PARTIES (13)—PLAINTIFFS—PERSONS WHO MUST JOIN.  In an action for a broker's commission on sugar to be purchased which plaintiff had agreed to divide with another broker furnishing the information as to the sugar, there is no defect of parties plaintiff in the omission of such other broker, who was to look entirely to the plaintiff without obligation on the part of the defendants.

CORPORATIONS (164-167)—REPRESENTATION—ESTOPPEL AND RATIFI-CATION—ACCEPTANCE OF BENEFITS—EVIDENCE.  Lack of authority of a salaried employee of a corporation to bind the corporation to pay a broker's commission on furnishing information as to where sugar could be purchased is no defense to liability on the contract, where the corporation acted on the information and accepted the benefits of the contract.

SAME (164-167).  Findings that a corporation did not employ a broker to find sugar and agree to pay a commission therefor are not sustained where there was direct evidence to that effect, denials were evasive and contradictory and the corporation acted at once on the information furnished by the broker and secured the sugar, and the claim of previous knowledge was based upon a rumor only, which had not been acted upon.

Appeal from a judgment of the superior court for King county, Tallman, J., entered October 6, 1921,

[1]Reported in 210 Pac. 387.

upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*Gates & Helsell,* for appellants.

*Bogle, Merritt & Bogle* and *Lane Summers,* for respondent.

Hovey, J.—At the times material to this controversy the appellants were engaged in the brokerage business in the city of Seattle and were represented by E. R. Hill, also of that city. The respondent was extensively engaged in domestic and foreign trade and handled a great many lines of other business, maintaining various departments for this purpose. Mr. E. J. Boxer was a salaried employee of respondent, bearing the title of manager of the domestic trade department, but during the time in question the manager of the foreign trade department was in the Orient and Mr. Boxer appears to have had the principal part, if not the entire handling, of the transaction involved here. The testimony for the appellant is to the effect that Hill had several interviews with Boxer for some time prior to April, 1920, with reference to bokerage matters, and that, about April 1, Hill was informed by Boxer that Waterhouse & Company were very anxious to find sugar. The market was then very active, prices were advancing, and the supply did not equal the demand. On April 8, in an interview between the two men, Hill expressed a desire to furnish such information, and Boxer then agreed that Waterhouse & Company would pay a commission of one-fourth of one cent per pound for all sugar which that company should secure as a result of any information supplied by Hill. At this time appellant was advised that such information could be secured from the Direct Supply Company, a brokerage concern in Victoria, B. C., and

upon the arrangement being effected between Hill and Boxer, appellant communicated with the Direct Supply Company and received in reply the following telegram:

"Victoria, B. C., April 9, 1920.
"Seattle Foreign Trading Co.
   "316 Boston Bldg., Seattle.
   "Our correspondents are Pentreath & Company, Hongkong, Cable address Pentreath. Mention our name or may not get it. Protection fifty-fifty with you.                  Direct Supply Association."

This telegram was received by appellant on April 9, and in the afternoon of that day Hill presented the same to Boxer, who said that he would send an urgent cable direct to his own agent in Hongkong and get action right away. On April 10, Boxer had prepared and sent the following cable:

"Watership                        April 10, 1920.
   "Hongkong
      "Urgent
   "Urgent. Telegraph firm offer c. i. f. & e. shipment by steamer, China, Java white sugars. All can secure. Mention packing grades. When can you ship? See Pentreath."

On April 14, the Hongkong agent of Waterhouse purchased from Pentreath & Company 2,200 tons of sugar. It further appears from the testimony for appellant that a few days after April 10 Hill and M. R. Colman of appellants' firm called upon Boxer on another matter and during the interview the question of this sugar purchase was discussed and Mr. Boxer assured them that they would be taken care of for their commission according to the contract appellants claim to have had with him. Immediately after this interview, Mr. Colman wrote the Direct Supply Company in Victoria to the effect that his firm had just taken up the matter of the sugar purchased with Waterhouse & Company

and that they could rely upon being taken care of for commission in case any business resulted. Subsequently Mr. Boxer denied the contract for commission.

The testimony for the respondent is to the effect that Mr. Boxer did not have authority to make the contract in question, and Mr. Boxer denies that any such contract was made. He testifies that, prior to April 4, he had received from his brother in Winnipeg a letter embracing the following:

"I heard that there are several large concerns in Hong Kong handling Java sugars, and if there is anyway you could get a line through your organization please do so, as we expect quite a rise here. I think one firm named Pintrith, or something like that has a big account there. Please go into this, and advise me what you can do."

And thereafter he tried to find the name of the firm mentioned in a Hongkong directory but was unable to do so, but did find the name Pentreath. He, however, took no action upon this information, unless he can be said to have done so by the acts testified to for appellants. The testimony for respondent further shows that, about the time Hill delivered the telegram to Boxer, respondent had been notified of the cancellation of an order for a large quantity of sugar contracted for by San Francisco brokers with whom respondent dealt, and that upon receipt of the following telegram:

"San Francisco, Calif., Apr. 10, 1920.
"E. J. Boxer,
  "Care Frank Waterhouse & Co.,
    "Seattle, Wash.
  "Work cables fast, locate Java China sugar, have man who will purchase five hundred thousand bags."
          "Warmington Duff Co."

respondent sent the cable to its Hongkong representative above referred to.

The trial court found that respondent did not act upon the information furnished by Hill, but did act upon information which it already possessed, and dismissed the action.

By its second affirmative defense, the respondent plead a defect of parties plaintiff, in that the Direct Supply Association, Limited, was not joined. This objection does not seem to have been urged until the conclusion of the trial, when, the court having ruled against appellants, a suggestion was made by counsel for respondent that this additional party should be brought in, and the court stated that it would have granted the motion if made earlier. Counsel for respondent contented themselves with observing, "I think we will never hear anything more from them." If the question can still be considered to be in the case, it is our opinion that the contract plead and established by appellant was solely one between appellant and respondent. There was no undertaking on the part of respondent to pay commissions to some person who might supply information to appellant which would in turn be supplied the respondent, and from the correspondence between appellant and the Direct Supply Association it appears that the latter looked solely to appellant for a share of whatever commission it might secure in the matter. We conclude that there was not a defect of parties plaintiff.

It is next contended by respondent that no authority is shown in Boxer to make the contract in question and that this would prevent recovery. In our opinion, this question is not in the case, as whatever may be the extent of Boxer's authority, if it is determined that the corporation accepted the benefit of the contract

made by him, it will be held to pay the price. *Allen v. Olympia Light & Power Co.*, 13 Wash. 307, 43 Pac. 55; *Windsor v. St. Paul, Minneapolis & M. R. Co.*, 37 Wash. 156, 79 Pac. 613, 3 Ann. Cas. 62; *Ulrich v. Pateros Water Ditch Co.*, 67 Wash. 328, 121 Pac. 818; *McKinley v. Mineral Hill Consol. Min. Co.*, 46 Wash. 162, 89 Pac. 495.

As to the merits of the controversy, we are unable to arrive at the conclusion reached by the trial court. The testimony on behalf of appellants is explicit and fully corroborated by the written evidence. The testimony for the respondent does not satisfactorily meet the case as made out. The testimony of Mr. Boxer is evasive and contradictory. He admits the pressing demand there was for sugar, although he says there were periods when they were not as eager to buy as they were at others. The information he received from his brother did not cause him to take any action and it was nothing more than a rumor. The information supplied by appellant was direct and definite, and his acceptance of the telegram which appellant supplied and which he admits receiving is the determining factor in the case. In explanation he says that he had no use for the telegram because he already had the information, but that he did not return it or tell Hill that he did not need it for fear that appellants might make use of the information in disposing of the sugar elsewhere. It was not necessary for him to have injured his own interests, as the straightforward thing for him to have done would have been to tell Hill that he did not desire the information and decline to accept the telegram. According to his own testimony, this information was of value in the hands of the appellants and he suppressed it for the benefit of his company. A defense sustained by testimony of this character should

not be sufficient to overcome substantial evidence establishing a contract.

The judgment is reversed, with directions to enter judgment for the amount sued for.

Parker, C. J., Fullerton, Main, and Tolman, JJ., concur.