[No. 22556. Department Two. September 29, 1930.]

P. R. LEWIS, *Appellant,* v. THOMAS KUJAWA, *Respondent.*[1]

[1]Reported in 291 Pac. 1105.

608

*H. B. Gardner* and *Roberts, Skeel & Holman,* for appellant.

*Allen & Walthew* and *Ward Wm. Roney,* for respondent.

FULLERTON, J.—On March 6, 1927, one Mary Kujawa died intestate in King county, leaving an estate therein consisting of real and personal property. Mrs. Kujawa, although a married woman, was living separate and apart from her husband. She held the property mentioned in her own right, and was in possession of it at the time of her death. She left, as her

heirs-at-law, her husband and three sons, each of mature age.

On the day following the death of Mrs. Kujawa, her husband, Thomas Kujawa, moved onto the premises and took possession of the property. Later on he was appointed administrator of the estate. On November 3, 1927, he and two of the sons, by individual deeds of warranty, purported to convey their interests in the real property of the estate to the other son, Joe Kujawa. Immediately after the execution and delivery to him of the deeds, Joe Kujawa applied for and obtained a loan of twenty-five hundred dollars from the First National Bank of Enumclaw, mortgaging the real property described in the deeds as security for the loan. The note evidencing the loan and the mortgage given as security therefor bore date of November 16, 1927. The bank did not immediately advance the money agreed to be loaned. It submitted the evidences of title of the borrower to a title insurance company, and paid over the money after that company had guaranteed the title; the money, however, was all so paid over prior to November 23, 1927.

On December 1, 1928, Thomas Kujawa, as the surviving husband of the deceased, petitioned for and was allowed out of the property of the estate the sum of three thousand dollars, in lieu of a homestead. The order of the court making the allowance was general; no specific property of any description was set apart to him. After the award was made, he, as the administrator of the estate, petitioned the court for leave to sell the real property of the estate at private sale. In the petition, no reference was made to the deeds conveying the property to Joe Kujawa. Nor was Joe Kujawa or the mortgagee given any notice of the proceeding; the petitioner treating the property as if it

was held intact by the estate. As a part of the petition, the petitioner asked leave to bid as an individual for the property at such sale, and for leave to apply the award, in the case he should become the successful bidder, towards the purchase price of the property. The court granted both petitions, and the administrator proceeded to sell the real property in the manner directed. He was the successful bidder at the sale, and in his administrative capacity sold the property to himself in his individual capacity for three thousand dollars, the amount of the award made by the court. The court subsequently confirmed the sale, and the administrator, in his capacity as such, executed a deed conveying the property to himself as an individual.

While the foregoing proceedings were pending on the probate side of the court, Thomas Kujawa instituted an action on the civil side of the court against Joe Kujawa to set aside the deed he had made to him, alleging, as grounds therefor, that the deed had been obtained from him by Joe Kujawa through fraud. He was successful in his action, obtaining a decree of the court setting aside the deed.

On May 14, 1928, the bank sold and assigned the note and mortgage to P. R. Lewis at its then face value. Joe Kujawa defaulted in the payments subsequently becoming due on the note, and P. R. Lewis, as plaintiff, began an action in the superior court of King county to recover thereon and foreclose the mortgage. He made parties defendant to the action Joe Kujawa and Thomas Kujawa, the latter in both his administrative and individual capacity. Joe Kujawa defaulted.

Thomas Kujawa appeared and answered, in which he set out the probate proceedings through which he acquired title to the property, set out that the deed from himself to Joe Kujawa was obtained through false representations, fraud and trickery, and that he

had no knowledge until long after the event that the instrument he had executed was in fact a deed, averring that it was represented to him to be some paper necessary to further the administration of the estate of which he was administrator. He also set up the action instituted by him against Joe Kujawa to set aside the deed, the judgment of the court therein, and averred that the mortgagee was bound by the judgment entered thereon. He further alleged that the bank, at the time it made the loan, had notice and knowledge of the fraudulent character of the deed at the time it was executed, and participated therein for the purpose of cheating and defrauding him. He also alleged:

"That he has reasons to believe and does believe and charges the fact to be that the said Joseph Kujawa did pay or cause to be paid to the said bank all moneys, if any there was, which was advanced and/or paid by said bank at the time of the execution of said note and mortgage and that the said bank did receive the return to it all money which it so advanced, if it advanced any, and that said note and mortgage is fully paid; and that, instead of satisfying same, in furtherance of the conspiracy to cheat and defraud this defendant, the bank made an assignment thereof to said plaintiff, without recourse on it, so as to enable the plaintiff to attempt foreclosure thereof and thus to harass, annoy and injure this defendant."

The prayer of the answer was that the plaintiff take nothing by his action, and that the mortgage be declared to be null and void as against him. Issue was taken upon the affirmative allegations in the answer, and a trial was had before the court sitting without a jury. At the conclusion of the trial, it entered a judgment in favor of the appellant against the defendant Joe Kujawa for the amount of the note with interest, but denied to the appellant the right to foreclose the

mortgage and subject the property therein described to the payment of the judgment; decreeing that the mortgage was "no lien or claim upon or against the property described therein and is invalid and of no force or effect."

The trial court made no formal findings of fact, nor is there, in the record elsewhere, anything to indicate upon what particular grounds it rested its conclusions. Testing these grounds by the record we find nothing in the evidence to indicate that the proceedings on the part of the bank itself were not had in entire good faith. It followed its customary practice in ascertaining whether the borrower had title to the real property which he offered as security for the loan. It advanced to the borrower the full amount of the loan. It had no actual knowledge at that time that the borrower's grantor was then disputing the validity of his deed to such grantor. In fine, in so far as the bank's part in the transaction is concerned, there is nothing to indicate that it was not the ordinary and usual transaction common to business institutions of its sort.

Nor do we find anything in the record which would impute to the bank constructive notice that Thomas Kujawa was then disputing the validity of the deed. It was possibly required to take notice that the administration proceedings were then pending, and that Thomas Kujawa was the administrator in the pending proceedings, but there was nothing in this situation which would prohibit him from executing a deed which would pass to another his interests in the real property of the estate. Nor, had the bank then examined the probate proceedings, would it have found that the administrator was claiming that the deed he had executed was invalid. The probate record showed that he had then filed with the estate an instrument

purporting to be his final account. The instrument was duly signed and verified by him as administrator. In it he recited that the estate was ready for distribution; that he had waived any claim for administrative fees; that all claims against the estate had been paid; and that the heirs of the estate had deeded all of their interests in the real property of the estate to Joseph Kujawa, one of the heirs of the estate, and that such real property should be distributed to him. The petition concluded with the following prayer:

"WHEREFORE, petitioner prays that your honorable court enter an order herein, fixing the time, manner and place of hearing of this petition; that upon the hearing of this petition your honorable court enter an order herein distributing the real estate hereinbefore described, to Joseph Kujawa, one of the heirs herein, as his sole and separate property;

"For an order distributing the personal property mentioned herein to the administrator herein;

"For an order discharging said administrator herein and releasing the official surety upon his bond, and for such other relief as to this court may seem just."

The petition was not acted upon, it is true. But, manifestly, if the contention is that the probate record furnished constructive notice of the respondent's claims it may be considered in refutation of the claim.

And here it may be well to notice another contention of the respondent. From the dates above given, it will be observed that the appellant Lewis acquired the note and mortgage on May 14, 1928, a date subsequent to the time the respondent had repudiated the deed and had begun an action to set it aside, and a date subsequent to the time he had instituted proceedings to obtain an award from the estate of which he was administrator, and a sale of its real property to satisfy the award. It is argued that the appellant, at least, had notice of the defect in the title to the

security, and cannot claim to be an innocent holder of it, even though its assignor, the bank, could make such a claim. But this contention mistakes the rule. The bank, with reference to the mortgaged property, stood in the relation of a purchaser for value and in good faith, and if it had an interest therein which it could enforce against the respondent now claiming the mortgaged property, it could pass that interest by an assignment of the note and mortgage to another. A contrary rule would deny the right of a person having a valid title to property to transfer the property, a principle contrary to the rule which favors the unrestricted right of a person to sell and dispose of his property, if not contrary to public policy.

In this same connection, the respondent seems to contend that the transfer of the note and mortgage to the appellant was without consideration, and that the appellant is not the real party in interest. But since the note was indorsed to him by the bank and the mortgage assigned to him by a written instrument signed and acknowledged by the bank, it would seem that he had the right to maintain an action on the instrument regardless of the question in whom was the beneficial interest in them vested. But we find nothing in the evidence to sustain the contention. The proofs are clear, as we view them, that the appellant paid to the bank the face value of the note, at the time the instruments were assigned to him, and made the purchase as an investment.

Nor do we find in the evidence any justification for the charge that his part in the transaction was in the furtherance of a fraud. There is no evidence that he had actual knowledge, at the time of the assignment, that there was a controversy pending over the validity of the deed which purported to vest in the mortgagor the title to the mortgaged property. If he had notice

at all, it was constructive notice, and notice of this sort, however much it may avoid a transaction otherwise seemingly valid, is not that form of notice which questions good faith.

The question then reverts to the character of the title held by the bank. If the title to the mortgage was defeasible in the hands of the bank, we are not inclined to question the conclusion of the trial court that it was defeasible in the hands of the appellant as its assignee. But we cannot follow the trial court in its conclusion that the mortgage was defeasible in the hands of the bank. The title to the property which was offered to it as security for the loan it was asked to make had every appearance of validity. The applicant for the loan produced a chain of title to the property tendered regular in all respects. Particularly, he produced a warranty deed from the very person now claiming to own the property which purported to vest in him that person's interests. This presented a title on which the bank had a right to rely, in the absence of actual knowledge that the instrument was fraudulent. It was not obligated to inquire into the circumstances by which the title was obtained. It could rely on the presumptions of honesty and good faith that attend upon all business transactions. As was said by the supreme court of the United States in *United States v. Detroit Timber & Lumber Co.*, 200 U. S. 321:

"We do not understand the law to be . . . that one who enters into an ordinary and reasonable contract for the purchase of property from another is bound to presume that the vendor is a wrongdoer, and that, therefore, he must make a searching inquiry as to the validity of his claim to the property. The rule of law in respect to purchases of land . . . is the same as that which obtains in other commercial transactions, . . . No one is bound to assume that the party with whom he deals is a wrongdoer, and if he

presents property, the title to which is apparently valid, and there are no circumstances disclosed which cast suspicion upon the title, he may rightfully deal with him, and, paying full value for the same, acquire the rights of a purchaser in good faith.''

Our own cases are to the same effect. *Dow v. Ballard,* 28 Wash. 87, 68 Pac. 176; *Attebery v. O'Neil,* 42 Wash. 487, 85 Pac. 270; *Daly v. Rizzutto,* 59 Wash. 62, 109 Pac. 276, 29 L. R. A. (N. S.) 467; *Murry v. Carlton,* 65 Wash. 364, 118 Pac. 332, 44 L. R. A. (N. S.) 314. In the last cited case, the plaintiff had taken a mortgage upon real property to which the record title was regular. In an action brought to foreclose the mortgage, one of the defendants defended on the ground that a deed on which the title of the mortgagor depended was obtained from her by fraud. It was held that the mortgagee, in the absence of knowledge of circumstances which would cast suspicion on the title, stood in the position of a purchaser in good faith. The court, in the course of the opinion, made this further observation, namely:

''It is also an ancient and respected principle of the law that, where one of two innocent parties must suffer, the one who was the cause of the misfortune must bear the burden, rather than the other; . . .''

These cases also deny the contention of the respondent to the effect that his possession of the property at the time the mortgage was executed was sufficient to put the mortgagee upon inquiry as to his interests in the property. See further on this question the subsequent case of *Crawford v. Timm,* 85 Wash. 568, 148 Pac. 886.

But it is argued that the mortgage is void in the hands of the bank for another reason. The respondent testified that it was represented to him by his sons and by his legal adviser, when the deed was

presented to him for execution, that it was an instrument pertaining to the estate of which he was administrator, necessary to the furtherance of his duties as such administrator, not an instrument conveying to another his interests in the real property of the estate; that he was not capable, because of his ignorance of the English language, of reading the instrument, and had to depend upon others to inform him of its purport; and that he did not learn until afterwards, when such claims were made, that he had parted with his interest in the property. Based on this testimony, it is contended that the deed is in effect a forgery, and that the rules applicable to forged instruments are applicable.

It is unquestionably the general rule that one holding under a forged instrument, however ignorant he may be of the forgery or how much of value he may have parted with in reliance on the genuineness of the instrument, cannot claim protection against the title of the rightful owner on the ground that he is an innocent purchaser in good faith and for value. As some of the courts have said, it would be a monstrous doctrine to hold that one, by forging a deed from his neighbor to himself could in any way affect the title of his neighbor. There are courts which apply the doctrine to instances such as the respondent attempted to show here. But we cannot think it the better doctrine.

There is a wide difference between the instance where the name of an owner of property is forged to an instrument purporting to convey the property, and the instance where the owner actually appends his name to the instrument of conveyance, even though his signature may be obtained thereto by trick or artifice. In the one, he is in no way a participant. By no act of his own can he prevent the fraud, and no negligence, fault or blame can be imputed to him. In the other, he is a participant. It is within his power to prevent the

fraud. He is not without negligence, fault or blame. If he relies upon others to advise him of his right, they are advisers of his own choosing. If they deceive him, he should not be permitted to visit the wrong on an innocent person who has parted with his property in reliance on the good faith of the transaction. He is the cause of the misfortune, and the principle of law quoted from the case of *Murry v. Carlton, supra,* applies.

But we are by no means persuaded that the respondent's testimony with regard to the transaction is the entire truth. Some of the evidence which leads to this conclusion we have already related. In addition to the final account filed by him in the estate, there are instruments which purport to divide the personal property between the heirs of the estate, all of which bear the signature of the respondent. After receiving the money advanced on the mortgage, the mortgagor paid his brothers for their interests in the real property, but disposed of the remainder of the money without paying anything to the father. His declarations made at the time indicate that this was the real trouble, and it was after that time that the theory was evolved which resulted in a conveyance of the property to him through the probate side of the court.

Contrary to the respondent's contention, the judgment entered in the action in which the deed was set aside as between the grantor and grantee therein, is not conclusive as against the bank or its assignee the appellant in this action. They were not parties thereto, and did not participate therein. The appellant is therefore privileged in this action to contend that the deed was not fraudulently obtained, and, in our opinion, the evidence weighs with that conclusion.

The judgment and decree of the trial court are reversed and the cause remanded with instructions to

enter a decree sustaining the validity of the mortgage and allowing its foreclosure in accordance with the usual procedure. Costs will be allowed the appellant in this court.

MITCHELL, C. J., MAIN, and HOLCOMB, JJ., concur.

[1]Reported in 291 Pac. 1111.