REINHARDT, Circuit Judge:
Ben and Peg Scott entered into an installment sale contract in 1978 to purchase real estate from Frank and Gala Howard. Under the contract, title to the land would not pass from the Howards as vendors to the Scotts as vendees until payment of the last installment. In 1981, prior to full payment, the Scotts assigned their vendees’ interest in the property to Frontier Bank as part of the security for a loan, which the bank promptly recorded.[1] By the end of 1981, the Scotts had defaulted on their obligations under the land sale contract and were delinquent in their payments on the Frontier loan. The Scotts also defaulted on two other land sale contracts, both for the purchase of real estate from Shannon and Donna Stafford. The Howards and the Staffords together filed a complaint in Washington state court, electing to seek specific performance by the Scotts on the land sale contracts rather than rescission. In May 1982 the court entered a money judgment for the unpaid balance, as agreed *867 upon by the parties. The judgment required the Scotts to pay the aggregate sum due on all three contracts; under the agreed-on court order, only after payment of the judgment would the Scotts be entitled to specific performance from the vendors, i.e., transfer of the deeds.
In 1984 the Scotts filed for bankruptcy. Thereafter, Frontier commenced an adversary proceeding in bankruptcy court seeking a declaration that any interest of the Howards in the property was subordinate to Frontier’s security interest. The bank argued that once the Howards obtained a judgment for the purchase price on their land sale contract, title to the property was transferred to the Scotts by operation of law. In essence, according to Frontier, as a result of the judgment the Howards’ pri- or interest in the property fell by the wayside and they became the unsecured creditors of a bankrupt, while Frontier, as the Scotts’ assignee, became the rightful holder of title to the property.
The bankruptcy court dismissed Frontier’s complaint on summary judgment, finding that the Howards had not elected a remedy inconsistent with the preservation of their rights under the real estate contract. The district court affirmed, finding that the Howards had retained their vendors’ interest in the property even after entry of the money judgment. Frontier makes two arguments on appeal: (1) that when the Howards obtained a money judgment on the land sale contract, under Washington law their vendors’ interest terminated; and (2) that the bankruptcy and district court decisions violate Frontier’s due process rights by concluding that it is bound by the state court judgment even though it was never notified of the proceeding. Neither of the bank’s arguments is persuasive.
First, the parties disagree as to whether a real estate vendor who seeks specific performance on a land sale contract and obtains a judgment for the purchase price must under Washington law deliver title to the vendee immediately upon obtaining the judgment, or only after receiving payment. Frontier relies heavily on language in one real property case, Stevens v. Irwin, 132 Wash. 289, 231 P. 783 (1925), to the effect that a vendor “must offer to perform the obligations imposed upon him by tendering and bringing into court a deed of conveyance to the property, because the vendor is not entitled to have both the land and a judgment for the purchase price.” 231 P. at 784. The bank argues that this requires the vendor to turn over title to the vendee once the judgment issues. In the Ho-wards’ view, the Stevens passage requires only that the vendor tender the deed, i.e., bring it to court and offer to convey it upon payment, and not that the vendor actually deliver the deed before satisfaction of the judgment. The district court seemed to agree with Frontier’s interpretation of the quoted language from Stevens, but decided against Frontier on an alternative ground. Because we agree with the district court on the alternative ground, we need not decide which party’s reading of Stevens is correct.
The district court based its decision on the fact that during the state court proceeding the parties reached an agreement concerning their rights and obligations under the land sale contract. The judgment entered there was an agreed upon judgment subscribed by both the Ho-wards and the Scotts. This fact permitted the district court to distinguish Stevens:
[T]he Scotts acquiesced in the retention of title by the Howards, the agreed judgment expressly providing that conveyance of title was not to be made by the Howards until the Scotts had discharged the judgment. The Scotts clearly contemplated that title would remain in the vendors until the contract price of the real property was fully paid. The Scotts waived their right to demand a conveyance of title at the time judgment was entered.
We agree with this interpretation of the state court judgment, since it stated that “upon payment of the judgment in these proceedings, defendants or the then holders of the vendees’ interest shall be entitled to performance from plaintiffs as required by the contracts.” Frontier points to no rule that prohibits a vendor and a vendee *868 from entering into such an agreement; in addition the state court obviously approved of the agreement, inasmuch as it issued the judgment. Thus, regardless what Washington law requires with respect to the transfer of a vendor’s title upon obtaining a judgment, we agree with the district court that the Scotts waived any rights they may have had as vendees to demand a conveyance of title at the time judgment was entered.
Second, Frontier asserts that because it did not have notice of the state court proceeding involving the Howards and Scotts, it is not bound by that court’s judgment. According to the bank, by holding to the contrary the bankruptcy and district courts have violated the bank’s due process rights. We disagree. Kendrick v. Davis, 75 Wash.2d 456, 452 P.2d 222 (1969), which also involved a land sale contract and a vendee who collateralized a loan with its interest in the land, is directly apposite. The court in Kendrick held:
Simply stated, we have in this case (1) a valid forfeitable real-estate contract properly recorded; (2) a purchaser in default; (3) a vendor declaring a forfeiture according to contract terms; and (4) a mortgagee of the purchaser who is unknown to the vendor, but whose security interest is properly recorded____
Defendants contend that the duty of notice should be on the vendor because he knew that under the terms of the contract the purchaser could have and might have assigned or mortgaged his interest after the execution of the contract and also because prior to his declaration of forfeiture the vendor could have obtained a title search to determine whether anyone might have obtained such interests. We think the obligation is otherwise. The burden is on the mortgagee to notify the vendor of his interest in the contract. No undue burden is thus placed on the mortgagee as he would have actual knowledge both of the identity of the vendor and of the vendor’s right to declare a forfeiture of the contract upon the purchaser’s default. Conversely, the vendor would not have notice of any mortgage or assignment unless and until he either received notice from the mortgagor or purchaser or made a title search himself.
452 P.2d at 227-28. Accord Welling v. Mount Si Bowl, Inc., 79 Wash.2d 485, 487 P.2d 620, 622-23 n. 1 (1971) (following Kendrick); Davis v. Rede Realty, Inc., 41 Wash.App. 527, 704 P.2d 1250, 1251 (1985) (following Kendrick). In explaining why it did not require the vendor to undertake a title search, the Kendrick court said, “The mortgagee can fully protect his security interest by merely notifying the vendor that he has an interest in the purchaser’s contract rights.” 452 P.2d at 227.
Similarly, here the Howards had the earlier arising interest in the property, so Frontier’s subsequent recording of its interest cannot constitute constructive notice to them of that interest. Further, the bank does not allege that the Howards had actual, as opposed to constructive, knowledge of the Scotts' assignment to the bank. Finally, whereas in Kendrick the mortgagee’s interest was forfeited, here Frontier (even assuming its reading of Stevens is correct) merely stepped into the shoes of the vendees and may acquire the property by performing the vendees’ duties under the contract.
Frontier cites to cases which it claims hold that a mortgagee is not bound by a judgment against the mortgagor involving the mortgaged property where the proceeding commenced after the mortgage arose and did not include the mortgagee as a party. Chase Nat’l Bank v. City of Norwalk, Ohio, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894 (1934); Lewis v. Kujawa, 158 Wash. 607, 291 P. 1105 (1930); Coe v. Wormell, 88 Wash. 119, 152 P. 716 (1915). However, the cited cases are wholly inapposite.[2] Each involved a proceeding in which a party sought to alter or invalidate a pre *869 viously recorded title upon which the subsequent mortgagee presumably had relied. Here, however, the earlier filed document was the real estate contract between the Scotts and the Howards, which according to its terms permitted the vendor upon the purchasers’ default to seek either forfeiture or specific performance. Thus, the state court proceeding did not seek to alter or invalidate any recorded document of title. In fact, in the proceeding the Howards sought to validate and enforce the earlier contract. Frontier cannot claim to have been unaware that this might occur. Equally important, the bank was or should have been aware that under Washington law it was its responsibility to give notice to the Howards of its interest in the property if it wished to be advised of any future proceeding regarding the real estate contract.[3]
Finally, there is some ambiguity as to whether under the state court judgment full payment must be made on all three properties before the vendor of any one must deliver the title to that property. While this result seems unlikely, there is no reason for us to attempt to resolve the question at this point. The question is not ripe, and neither the bankruptcy court nor the district court referred to it in its decision.
AFFIRMED

. Shortly afterward, the Scotts also quitclaimed one-half of their remaining interest in the property to Randy and Marion Hannon. The Hannons’ interest is not at issue on appeal.

. While we do not believe that the cases relied on by Frontier in any way conflict with Kendrick, even if some tension existed, we would follow Kendrick because it is the latest statement of the law of Washington by the Washington Supreme Court and it has been followed without equivocation by that court as well as by the intermediate Washington appellate court.

. According to the dissent, Frontier argues not that it should have been notified and afforded an opportunity to participate in the state court proceeding, but that absent its participation it should not be bound by the Scotts’ waiver of their rights. Post, at 866. Substantively, of course, Frontier argues that the Howards were not entitled to a judgment in the state court proceeding without tendering title. As we have stated in the text, supra, the substantive argument might be correct had the Scotts and the Howards not agreed to a mutually satisfactory resolution of their dispute. More important here, while Frontier protests vigorously that its absence as a party prevented the issuance of any binding order, its claim to relief rests on the existence of the state court judgment it attacks.
In the absence of that judgment, the Howards would retain the title which they possessed pri- or to its entry. For that reason Frontier does not seek to set aside the judgment. Thus, Frontier finds itself in the odd position of seeking not to invalidate the state court judgment but to have the federal courts rewrite it and then enforce the rewritten terms.