[No. 31861.   Department Two.   January 17, 1952.]

A. J. KRAFT, *Respondent and Cross-appellant,* v. SPENCER TUCKER SALES, INC., *Appellant.*[1]

[1]Reported in 239 P. (2d) 563.

944

*Cheney & Hutcheson* and *Blaine Hopp, Jr.*, for appellant.

*Gavin & Robinson*, for respondent and cross-appellant.

HAMLEY, J.—A. J. Kraft brought this action against Spencer Tucker Sales, Inc., to recover twenty-eight hundred dollars. He had deposited this sum on the purchase price of a new Tucker automobile. The purchase could not be completed because Tucker automobiles have never been available for delivery. Defendant denied liability on the ground that the deposit had been made with one Henry E.

Spencer, individually, and was therefore not the obligation of the corporation.

Early in 1947, Spencer was the sole proprietor of a used car and automobile repair business located at 1606 North First street, Yakima, Washington. He also held a franchise from the Tucker Corporation, of Chicago, Illinois, for the sale of new Tucker automobiles in the city of Yakima. On July 2, 1947, plaintiff Kraft placed an order with Spencer for a Tucker automobile, the price of which was to be about twenty-eight hundred fifty dollars. He made a two-hundred-dollar cash deposit. On September 4, 1947, Kraft made an additional deposit of eight hundred fifty dollars, consisting of a check in the sum of five hundred dollars and delivery of a 1930 Chrysler automobile, for which a three-hundred-fifty-dollar credit was allowed.

On October 2, 1947, Spencer entered into an agreement with Dr. Russell L. Herr, of Yakima, to engage in a new and used car business under the name of Spencer Tucker Sales, Inc. A corporation having that name was organized early in November, 1947. Spencer transferred to the corporation his tools, equipment, option rights on the premises where he had been carrying on business, and the Tucker franchise. Dr. Herr paid Spencer half of the agreed value of this property. The two organizers each received forty-nine of the one hundred shares of stock the corporation was authorized to issue, the other two shares going to their respective wives. Spencer became president and general manager; Dr. Herr was made vice-president; Mrs. Spencer became secretary; and Mrs. Herr was elected treasurer.

It was understood that Spencer could continue his personal used car and automobile repair business at the same location, and he did so until August, 1948. The board of directors, at the outset, established a definite policy against accepting cash deposits in connection with purchase orders for Tucker automobiles. The evidence does not show how soon the new corporation began soliciting and accepting such orders. Early in March, 1948, the corporation received a supply of used cars from Kansas City, Missouri.

About the same time, it began the construction of a building on the North First street premises. This building was completed in late August or early September, 1948. On March 15, 1948, the corporation opened a bank account.

In the meantime, on January 19, 1948, Kraft came to the premises and gave Spencer a further five-hundred-dollar deposit on the Tucker automobile. Kraft did not then know about the corporation and made his check payable to "Spencer Tucker Co." as he had in the case of the two previous deposits. Spencer endorsed this check "Spencer Tucker Co. Henry E. Spencer," as he had the original two-hundred-dollar check. The five-hundred-dollar check of September 4, 1947, had been endorsed, "Spencer Body Works Henry E. Spencer."

On July 28, 1948, Spencer called Kraft to the place of business. Spencer and his wife there explained to Kraft that the order of sequence of the delivery of Tucker automobiles was then being fixed in connection with the signing of "Accessory Purchase" orders. Kraft then executed such an order, evidencing purchase and sale of a group of accessories priced at $237.92, including tax. The order called for delivery of the accessories "with car." It is conceded that Kraft made no payment at that time. The accessory order was signed "Spencer Tucker Sales, Inc., By Lucille G. Spencer." There was issued to Kraft, at the same time, and similarly executed, a "sequence allotment," assigning Kraft the number one sequence for Tucker automobiles to be delivered in Yakima.

On November 10, 1948, Kraft delivered to Spencer, at the regular place of business, a 1942 Dodge sedan, as a further deposit on the Tucker automobile. Kraft testified at the trial that he did not then know that the corporation was involved in the transaction, though of course the accessory purchase order and sequence allotment provided that information. It is not disputed that Kraft was then unaware that Dr. Herr or any other individual, aside from Spencer, had an interest in the sale. A twelve-hundred-fifty-dollar credit was allowed on the Dodge, thereby bringing Kraft's

total deposit to twenty-eight hundred dollars. The Dodge was kept in the used car lot on the premises for a time, and was then traded by Spencer for a 1941 Pontiac. The Pontiac was thereafter kept in the used car lot until early in 1949. On December 31, 1948, Spencer sold all of his stock in the corporation to Dr. Herr, who then took over active management of the business. Sometime prior to that date, most of the corporate records, including the books of account, of which Spencer and his wife had had custody, disappeared.

Early in February, 1949, Kraft discovered that Dr. Herr had an interest in the Tucker sales business in Yakima. Kraft then went to Dr. Herr and requested return of his deposit. This demand furnished Dr. Herr with his first information regarding Kraft's deposits with Spencer. It may be, however, that Dr. Herr already knew that Kraft had placed an order for a Tucker automobile. Dr. Herr immediately called a conference, which was held two days later, attended by Kraft, Spencer, Dr. Herr and their respective attorneys. At this conference Kraft renewed his demand for return of the twenty-eight hundred dollars. He exhibited to Dr. Herr and the latter's attorney the receipts and other papers evidencing the deposit payments.

Dr. Herr contended at this conference that the twenty-eight-hundred-dollar sum was the individual obligation of Spencer, while Spencer took the position that it was a corporate obligation. With particular reference to the five-hundred-dollar payment which had been made on January 19, 1948, Spencer told Dr. Herr that he had accepted this sum for the corporation and had used it for corporate purposes. Regarding the delivery of the Dodge on November 10, 1948, Spencer stated that he acted for the corporation in accepting this automobile, in extending the twelve-hundred-fifty-dollar credit, and in later trading the Dodge for a Pontiac. Dr. Herr criticized Spencer severely for allowing a twelve-hundred-fifty dollar credit on the Dodge or for trading it for the Pontiac, stating that the Pontiac was worth far less than that amount.

No agreement was reached at the conference. Shortly thereafter Spencer disappeared and had not been located at the time of the trial. Kraft began this action on June 3, 1949. On June 27, 1949, Dr. Herr sold the Pontiac to an employee of the corporation for seven hundred dollars.

The action was tried to the court without a jury. At the conclusion of the trial the court orally announced that judgment would be granted for plaintiff in the sum of twelve hundred fifty dollars, representing the credit which had been given for the Dodge automobile. Thereafter the court granted plaintiff's motion for judgment notwithstanding the oral decision, to the extent of allowing recovery of an additional five hundred dollars. This additional sum represents the January 19, 1948, payment made by Kraft. Judgment was accordingly entered in the sum of seventeen hundred fifty dollars. Defendant has appealed, and plaintiff has cross-appealed.

Respondent's motion that the appeal be dismissed, for the reason that no appeal bond has been served on him or his attorney, is denied. *Adjustment Dept., Olympia Credit Bureau v. Smedegard, post* p. 962, 236 P. (2d) 560.

We will first consider appellant's assignments of error relating to the allowance of recovery on the twelve-hundred-fifty-dollar item representing the credit given Kraft on the 1942 Dodge. The trial court found, in effect, that in accepting the Dodge and giving Kraft a twelve-hundred-fifty-dollar credit thereon, and in trading the Dodge for a Pontiac, Spencer purported to act for the corporation. The trial court further found that the corporation sold the Pontiac for seven hundred dollars, which sum was deposited in the corporate bank account. Appellant challenges these findings of fact. Our review of the record, however, leads us to believe that the evidence does not preponderate against these findings.

On the basis of these findings, the trial court entered a conclusion of law to the effect that the corporation had ratified, approved, accepted and agreed to be bound by the purchase contract to the extent of the twelve-hundred-fifty-

·dollar credit. Appellant contends that this conclusion is erroneous.

■ When Spencer accepted the Dodge and allowed Kraft a twelve-hundred-fifty-dollar credit thereon, he was without authority to so act on behalf of the corporation. Such a transaction was, in fact, contrary to the specific policy of the corporation's board of directors, as Spencer well knew. For the same reason, his later trade of the Dodge for a Pontiac was also probably in excess of his authority. It therefore follows that the corporation cannot be held liable to the extent of that credit unless, after obtaining knowledge of the facts attending the transaction, the corporation received and retained the benefits of it. If the latter circumstances are shown to exist, the corporation must be held to have ratified the unauthorized acts and to have estopped itself to repudiate them. *Kirwin v. Washington Match Co.*, 37 Wash. 285, 79 Pac. 928; *Stilwell v. Spokane Alarm Co.*, 66 Wash. 703, 120 Pac. 85; *Ulrich v. Pateros Water Ditch Co.*, 67 Wash. 328, 121 Pac. 818.

■ Such circumstances do exist in this case. The corporation, represented by its president and almost sole stockholder (Dr. Herr), obtained knowledge of the entire transaction at the conference held in February, 1949. More than four months later, possessed of this knowledge, and after institution of the present suit, the corporation sold the Pontiac and retained the proceeds. Under the principles referred to above, this constitutes a clear-cut ratification of Spencer's unauthorized acts in accepting the Dodge, giving Kraft a twelve-hundred-fifty-dollar credit thereon, and trading the Dodge for a Pontiac.

Since the basis of recovery is ratification, rather than for money had and received, the trial court properly allowed recovery to the extent of the full twelve-hundred-fifty-dollar credit, notwithstanding the fact that the corporation realized only seven hundred dollars on the sale. We find no error as to the allowance of recovery on this twelve-hundred-fifty-dollar item.

Several assignments of error are directed to the allow-

ance of recovery on the five-hundred-dollar item representing the cash deposit which Kraft made on January 19, 1948. After finding that this payment had been made at the corporation's place of business to Spencer, who was then president and general manager of the corporation, and that no books and records relating to its business had been produced by the corporation, the trial court concluded that

" . . . it will be presumed, there being no evidence to the contrary, that said sum was properly used and applied by said Henry E. Spencer for corporate purposes and that said corporation received the benefits thereof and that, accordingly, said defendant corporation ratified and accepted the benefits of such purchase contract with the plaintiff to the extent of said $500.00 payment."

▇▇ It will be observed that, while the trial court uses the term "ratified," recovery on this five-hundred-dollar item is really predicated upon the theory of money had and received. Under such theory, all that respondent had to prove was that the corporation had received money from respondent for which no consideration had been given. *Cone v. Ariss*, 13 Wn. (2d) 650, 126 P. (2d) 591.

Respondent had the burden of proving that the corporation received this money. The trial court held, in substance, that respondent had made a *prima facie* showing to this effect by establishing that the money had been paid to the president and manager of the corporation at the corporation's place of business. Since the corporation was unable to go forward with the evidence, by affirmatively showing through the corporate records or otherwise that it had not received and retained this sum, the trial court held that recovery must be allowed to respondent.

▇▇ Under ordinary circumstances, the proof of payment to the corporation's president at the corporation's place of business would seem to establish, *prima facie,* that the corporation had received the payment. What makes this case difficult is that the circumstances are far from ordinary. While Spencer was president and manager of the corporation, he had entered into the purchase contract

with Kraft as an individual, and had accepted previous deposits in that capacity. While the place where the payment was made was the place of business of the corporation, it was also the place of business of Spencer as an individual. Spencer was not authorized to accept such a deposit on behalf of the corporation. The check was actually cashed by Spencer as an individual at a time when the corporation had no bank account.

On the other hand, it is a fact that Spencer then had no power, as an individual, to sell and deliver a Tucker, since the franchise had already been transferred to the corporation. While the corporation was not then engaged in the sale of used cars, it did maintain a place of business and owned tools and equipment. The occasion for incurring corporate expenses was therefore not wholly lacking. Spencer told Dr. Herr, at the February, 1949, conference, that the five hundred dollars had been used for corporate purposes. This was, of course, self-serving. Yet it is consistent with Spencer's later proven conduct in retaining the Dodge and Pontiac for the corporation rather than converting one or the other of them to his own use.

Considering all of these factors, we are of the opinion that the trial court was correct in concluding that respondent had established, *prima facie*, that the corporation had received and retained this deposit. It is regrettable that the corporation was unable to produce its books and records, which might have completely discredited Spencer's claim. However, the handicap resulting from the disappearance of these records cannot justifiably be visited upon respondent. It was the corporation which placed these records in irresponsible hands. It was the corporation, if anyone, which had an opportunity to protect itself after the records disappeared and before Spencer disposed of his corporate stock. The trial court properly allowed respondent to recover on this item.

■ Appellant contends that, if any recovery is allowed, appellant should be given a credit in the sum of $237.92, representing the purchase price of the accessory set which

Kraft ordered. Appellant is able to deliver that set, and asserts that it is usable on any make of automobile. The order in question, however, provides that the dealer will deliver the accessory set "with car." This clearly implies that the purchaser is not required to take delivery of the accessories except in connection with the delivery of a new Tucker automobile. Since such automobiles are not available for delivery, Kraft is not bound to accept and pay for the accessories.

Appellant's final assignment of error relates to the refusal of the trial court to strike from the cost bill an item of one hundred twelve dollars, representing two years' premium on a fifty-six-hundred-dollar attachment bond. Appellant contends that an attachment bond is not required in order to maintain the action, and the bond premium is therefore not recoverable as costs.

The pertinent statute is Rem. Supp. 1943, § 7247 [P.P.C. § 664-5]. We construe it to mean that reasonable sums paid as bond premiums are recoverable wherever such a bond is required in connection with a process or proceeding essential or appropriate to the main action. Attachments are appropriate to the action before us, and a surety bond was required in order to effectuate the attachment. See, also, Rem. Rev. Stat., § 656 [P.P.C. § 11-19], which indicates that costs in connection with an attachment are recoverable where the attachment has been executed. The rule established by these statutes is not modified by Rem. Supp. 1947, § 45.28.03, relied upon by appellant. The latter section is a part of the insurance code (chapter 79, p. 189, Laws of 1947), the title of which is not sufficiently broad to cover the matter of court costs.

Appellant further contends, however, that an attachment was entirely unnecessary in this case, as both parties were and are financially responsible. Neither appellant nor its attorney had knowledge that there was such an attachment until the cost bill was served. It is argued that, had appellant known of the attachment, it would have waived the bond or applied for a reduced bond.

■ All parties owe a duty to avoid needless costs in litigation. *Dent v. Foy,* 214 Ala. 243, 107 So. 210; *Marshall v. Martin,* 107 Conn. 32, 139 Atl. 348. The trial court is vested with wide discretion to disallow costs where it appears that they are exorbitant or unnecessarily incurred. The trial court here reviewed and rejected the claim of unreasonableness. We are unable to say, on the record before us, that the trial court abused its discretion in denying the motion.

On respondent's cross-appeal, it is contended that the execution and delivery to Kraft, on July 28, 1948, of the accessory purchase order and sequence allotment amounted to corporate ratification or adoption of the entire contract. It is asserted that Spencer's act in this regard, as president and manager of the corporation, binds the corporation. It is further argued that, if this be not so, then the corporation is nevertheless bound because this transaction gave Dr. Herr actual notice, or charged him with notice, that Kraft had made cash deposits towards the purchase of the Tucker.

In this connection, appellant calls attention to the fact that about one hundred twenty such orders and sequence allotments were issued, and that Kraft is the only customer who was not required to pay for the accessory group at the time the order was taken. In view of the fact that Kraft was treated differently in this respect, and since he received the number one sequence, it is contended that Dr. Herr was at least put upon inquiry as to the whole transaction. His failure thereafter to disavow the transaction is therefore said to evidence ratification or adoption of the contract on behalf of the corporation.

■ It may be said, at the outset, that if the acceptance of the accessory purchase order and the issuance of the sequence allotment binds the corporation, it is because of an implied assumption of the Kraft contract, and not because of an implied ratification or adoption of such contract. Ratification presupposes a principal existing at the time of the agent's action. *United German Silver Co. v. Bronson,*

92 Conn. 266, 102 Atl. 647; *McArthur v. Times Printing Co.,* 48 Minn. 319, 51 N. W. 216.

Both ratification and adoption presuppose that the acts ratified or adopted were performed by one who purported to act on account of another. *Ellison v. Jackson Water Co.,* 12 Cal. 542, 552; *Cyclone Fence Co. v. McAviney,* 121 Conn. 656, 186 Atl. 635; 1 Restatement, Agency, 204, § 85.

When Spencer entered into the original contract with Kraft, and when he accepted the first two payments, the corporation was not in existence, and he was acting for himself individually. Hence his contract with Kraft was not capable of ratification or adoption by the corporation thereafter organized. It was, however, capable of being expressly or impliedly assumed by the corporation. *Continental Trust Co. v. Toledo, St. L. & K. C. R. Co.,* 86 Fed. 929; *McPike v. Kardell Motorcar Co.* (Mo. App.), 213 S. W. 904.

Spencer's act in accepting the accessory purchase order and issuing the allotment sequence was not sufficient, in itself, to constitute an implied assumption of the Kraft contract, binding on the corporation. This is true because Spencer was personally and adversely interested in that contract. The rule is fundamental that a director or officer may not bind his principal in a matter in which he is adversely interested. *Mooney v. Mooney,* 71 Wash. 258, 128 Pac. 225; *German-American State Bank v. Soap Lake Salts Remedy Co.,* 77 Wash. 332, 137 Pac. 461; *Post v. Maryland Cas. Co.,* 2 Wn. (2d) 21, 97 P. (2d) 173.

It is therefore apparent that, if an implied assumption is to be found in connection with the accessory order and sequence allotment, it must be upon the ground that Dr. Herr was thereby informed, or put on notice, as to the entire transaction. The findings of fact and conclusions of law do not deal with this precise point.

It is probable that examination of the corporate books would have revealed that Kraft had not paid for these accessories. But Dr. Herr did not examine the books and make this determination and there was nothing on the face of the purchase order which operated to place this duty

upon him. While Kraft did not pay for the accessory group, the purchase order, oddly enough, recites that he did. Nor was the Kraft accessory order different from other orders with regard to date of delivery. While his purchase order provided that the accessories would be delivered "with car," the evidence indicates that the other purchase orders contained a similar provision.

But even if Dr. Herr had learned that Kraft had not paid for the accessories, we see no compelling reason why this would put Dr. Herr on notice that Kraft had made cash deposits to Spencer prior to organization of the corporation. We reach a like conclusion with respect to the number one sequence allotment. The evidence is inconclusive as to whether Dr. Herr knew that the number one sequence had been issued to Kraft. Assuming that he had this information, however, it would not provide notice with respect to pre-incorporation deposits, for the sequence allotments had no relation to deposits of any kind or at any time.

In view of the foregoing considerations, it is our conclusion that respondent has failed to establish an implied assumption of the Kraft contract by the corporation. The trial court was therefore correct in disallowing recovery on the first two payments made by Kraft.

The judgment is affirmed on the appeal and the cross-appeal. Neither party shall recover costs in this court.

SCHWELLENBACH, C. J., HILL, FINLEY, and OLSON, JJ., concur.