[No. 1255-2.    Division Two.    November 1, 1974.]

JOHN L. HENDRICKS *et al., Respondents,* v. SHIRLEY L. LAKE *et al., Defendants,* WESTSIDE CENTER, INC., *et al., Appellants.*

*John S. Lynch, Lynch & Lynch, Harold Hartinger, Michael Stevenson, Kane, Vandeburg & Hartinger, E. Robert Fristoe,* and *Fristoe, Taylor & Schultz,* for appellants.

*Harold A. Pebbles, H. John Aitken* and *Pebbles, Swanson & Lindskog*, for respondents.

PEARSON, C.J.—This appeal brings in issue the enforceability of a restrictive (noncompetition) covenant contained in an unrecorded shopping center lease. The trial court allowed plaintiffs (Hendricks) an injunction against the following defendants, all of whom are appellants:

(1) the bona fide purchaser (Forstrom) of a leasehold estate on adjoining property outside plaintiffs' chain of title;

(2) Forstrom's lessor (Palmer), who did not have actual knowledge of the encumbrance, but who had both an ownership interest in and some prior management connection to a portion of the property described in the unrecorded lease.

(3) Hendricks' lessor (Westside Center, Inc.), who had not participated directly or indirectly in the alleged violation of the restrictive covenant.

For the reasons stated below, we are of the opinion that it was error to grant the injunction against all three defendants. For clarity, we will refer to the parties by name.

Hendricks acquired his leasehold interest in 1960 from the then owner of a tract of land in Thurston County. The owner-lessor of the tract (Ray Lewis) contemplated the development of a shopping center on the land. Hendricks had operated a drugstore and pharmacy in a building located on a portion of this land continually since May 31, 1960.[1] His lease was never recorded prior to the events which led to this suit. The restrictive covenant in Hendricks' lease provided:

> Lessors covenant and agree that the building herein demised to the Lessees and to be used by the Lessees or their sublessees for the purpose of carrying on a modern drugstore business shall be the only building in the en-

---

[1] The drugstore and pharmacy has operated under the name Hendricks Rexall Drug Company.

tire shopping center[2] to be used for the carrying on of a modern drugstore business, or for the sale of the items as set forth in paragraph 25(a) . . . Lessee's remedies shall be limited to injunctive relief.

The lease term was 20 years, with a 5-year renewal option.

In March 1961 Lewis conveyed the leased premises and part of the original tract described in the lease to Westside Center, Inc., a corporation owned by his two daughters, Shirley L. Lake, and Barbara Clarke. Mr. Lewis managed the interests of this corporate defendant until his death in 1973, at which time the management was undertaken by Lewis' son-in-law, John M. Clarke.

The portion of the original tract which Lewis did not transfer to Westside Center, Inc., was conveyed by him in August 1961 to a new corporation, Westside Development Corporation, Inc. (WDC). Lewis gave a warranty deed to the corporation in exchange for 50 percent of that company's capital stock. The balance of the WDC stock was issued to the defendants Palmer for cash in August 1961. The warranty deed to WDC made no reference to the restrictions contained in Hendricks' unrecorded lease.

WDC was formed by Lewis and Palmer for the purpose of acquiring and developing properties adjacent to the holding of Westside Center, Inc. Subsequently, WDC did acquire additional properties adjacent to the properties still held by Westside Center, Inc. One such acquisition was acquired by warranty deed from George M. Beatty and wife (called the Beatty tract). This tract was situated to the east of Hendricks' leased premises. It was on the Beatty tract that Forstrom's leasehold interest was acquired.

WDC was managed by Palmer from 1961 to 1965 and again from July 1971 until WDC was dissolved in 1973. Lewis managed WDC in the interim period and, as stated above, was also the managing officer of Westside Center, Inc. Palmer had no interest in Hendricks' lease nor in the property held by Westside Center, Inc., nor did he ever

---

[2]The description related to the original tract of land owned by Lewis.

have occasion to inspect the leases issued by it. Also, Palmer had no management responsibilities for that company.

In 1971, Palmer returned to Olympia from California, where he had resided for 6 years. Because of Lewis' failing health, he and Palmer had some general discussions about selling the combined properties of Westside Center, Inc. and WDC. They also commenced negotiations for the dissolution of WDC.

While these negotiations were under way, WDC undertook to construct a building on the land immediately adjacent on the east to Hendricks' property. Approximately the southerly two-thirds of the property on which this building was constructed was land formerly conveyed by Lewis to WDC in 1961 and technically, at least, subject to the restrictive covenant in Hendricks' lease. The northerly one-third of the building was constructed on the Beatty tract. The construction of the building was financed by a deed of trust executed jointly by WDC and Westside Center, Inc. —although the latter corporation held no interest in nor title to the property on which the building was located.[3] The building was completed prior to the dissolution of WDC.

By the terms of the dissolution of WDC, which occurred in January of 1973, Palmer received a deed to the new building as well as to other properties held by WDC. On June 7, 1973, Palmer leased a portion of the building located entirely on the Beatty tract to the defendants Forstrom. The purpose of the lease was to allow Forstrom to operate a pharmacy thereon, under the name and style of the "Medicine Shoppe." It is conceded by Palmer and Forstrom that the Medicine Shoppe would be in direct competition with Hendricks Rexall Drug Company. This lease was recorded.

The trial court found and concluded, in effect, that Westside Center, Inc., and WDC were jointly promoting a shop-

---

[3]Presumably Westside Center, Inc., stood to benefit with respect to its holdings by the additional customer traffic that would be generated by additional stores in the area.

ping center; that under the circumstances equities in Hendricks' favor required the court to pierce the corporate veils of the two entities. In so doing Palmer, although lacking actual knowledge of the restrictive covenant, was charged with constructive notice of the covenant and such notice was extended to his tenant, Forstrom. The circumstances relied upon to establish constructive notice occurred after Lewis sold the subject property to WDC in August 1961.

In addition to these findings and conclusions, the court also found that Palmer was without *actual* knowledge of the restrictive covenant at the time of the execution of the lease in question. Forstrom, the court found, was a bona fide purchaser without *actual* or *constructive* notice of the encumbrance at the time he acquired his leasehold interest. No findings were entered that Westside Center, Inc., had directly or indirectly participated in the violation of the covenant nor threatened to so violate its lease with Hendricks.

We shall consider the injunction as it relates to the three defendants separately.

### Westside Center, Inc.

The trial court entered no findings which would support the injunction against Hendricks' landlord, Westside Center, Inc. That company had neither directly or indirectly violated or threatened to violate the restrictive covenant contained in its lease to Hendricks. The testimony was uncontradicted in this respect.

It is a well settled rule that one who seeks relief of either a temporary or permanent injunction must establish (1) that he has a clear legal or equitable right, (2) that he has a well grounded fear of immediate invasion of that right by the one against whom the injunction is sought, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. *Port of Seattle v. International Longshoremen's & Warehousemen's Union*, 52 Wn.2d 317, 324 P.2d 1099 (1958); *Tyler v. Van*

*Aelst,* 9 Wn. App. 441, 512 P.2d 760 (1973). *See also* RCW 7.40.020 where the grounds for issuing an injunction pendente lite are that the defendant "is doing, or threatened, or is about to do, or is procuring, or is suffering some act to be done in violation of the plaintiff's rights . . ."

Since there is no testimony or finding to satisfy the second and third requirement of the above-stated common-law rule or which would support an injunction under the statute, the injunction was erroneously allowed as to Westside Center, Inc.

DONALD E. FORSTROM AND MARGARET ANN FORSTROM

The ultimate issue as to the validity of the injunction against Forstrom is whether a restrictive covenant in an unrecorded lease binds a bona fide purchaser of a leasehold estate in premises outside the lessee's chain of title. We hold that it does not.

Washington's recording statute, RCW 65.08.070, provides:

Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor, his heirs or devisees, of the same real property or any portion thereof whose conveyance is first duly recorded.

■ It seems evident that if a good faith purchaser for valuable consideration who records first is protected against a previous conveyance of the same interest from the same conveyor, that a good faith purchaser for valuable consideration who purchases property in a different title chain should likewise be protected.

The recording statutes do not require a "good faith" vendor as a condition to affording protection to a subsequent vendee. *See* RCW 65.08.060 and RCW 65.08.070. Neither do the cases which have authoritatively construed those statutes make this requirement. *See Glaser v. Holdorf,* 56 Wn.2d 204, 352 P.2d 212 (1960). Thus even assuming arguendo that Palmer had constructive notice of the restrictive covenant, there is no legal basis for imputing that notice to his lessee, Forstrom. *Skaggs v. Jensen,* 94 Idaho 179, 484 P.2d 728 (1971). A grantee is not bound to assume

that his grantor is a wrongdoer, and may rely upon record title when purchasing property. *Lewis v. Kujawa,* 158 Wash. 607, 291 P. 1105 (1930).

It is further evident that the trial court's finding that Forstrom acquired his leasehold interest as a bona fide purchaser for valuable consideration, compels the conclusion that Hendricks did not sustain his burden of proving that Forstrom had notice of the unrecorded encumbrance. *See Paganelli v. Swendsen,* 50 Wn.2d 304, 311 P.2d 676 (1957).

We make no determination of whether or not Forstrom would have been bound, had Hendricks recorded his leasehold interest. However, that proposition has doubtful validity in view of the fact that Forstrom was not within Hendricks' chain of title. *See Koch v. Swanson,* 4 Wn. App. 456, 481 P.2d 915 (1971); *Skaggs v. Jensen, supra. But see* Note, *Restrictive Covenants in Shopping Center Leases,* 34 N.Y.U. L. Rev. 940, 949-50 (1959). We conclude that the injunction against defendants Forstrom was in error.

RAYMOND K. AND HELEN F. PALMER

The ultimate question here is whether or not, on the facts of this case, Palmer should be charged with constructive notice of Hendricks' unrecorded restrictive covenant. We start with several general principles that relate to this question. Most of these rules are discussed in *Paganelli v. Swendsen, supra.* We summarize them as follows:

(1) Normally the purchaser of property may rely upon record title when purchasing property.

(2) If such purchaser is challenged by the claim of one holding an unrecorded interest, the latter has the burden of proving either actual or constructive notice in the purchaser of the challenger's unrecorded interest.

(3) If the challenger fails in his burden of proof, the purchaser is protected by the recording statute. RCW 65.08.070.

(4) Where there is no evidence of actual notice, the challenger has the burden of proving inquiry or imputed

notice (constructive notice). Inquiry notice requires proof that the purchaser had knowledge of facts or circumstances that would lead a reasonably prudent purchaser to make inquiry.

Also pertinent to our inquiry is the time frame that may be considered in determining the presence of inquiry notice. It is well established that facts or circumstances giving rise to inquiry notice by a purchaser must be within his knowledge *prior* to and not *after* he purchases the property. *Bersos v. Cape George Colony Club*, 4 Wn. App. 663, 484 P.2d 485 (1971) and 10 Wn. App. 969, 521 P.2d 1217 (1974). *See* 3 H. Tiffany, *Real Property* § 863 (3d ed. 1939).

With these general principles in mind, we turn to the facts of this case. WDC and Palmer, as a 50 percent shareholder, acquired certain property in August 1961 from Lewis by warranty deed. It cannot be argued that Palmer had any notice, either actual or constructive, of Hendricks' unrecorded restriction at that time.

█ The pivotal question is whether or not the corporate entity (WDC) should be imputed with Lewis' knowledge concerning the restrictive covenant at the time the property was transferred to WDC. In our opinion such imputation of knowledge should not be made in this case. The general rule of agency that a principal is chargeable with notice of facts known to his agent is based on an underlying duty of the agent to communicate his knowledge to his principal. *See* 3 M. Wolf, *Fletcher Cyclopedia of Corporations* § 819 (Rev. ed. 1965); Restatement (Second) of Agency §§ 274, 278 (1958).

However, the exception to that rule occurs where notice to or knowledge of the corporate officer or agent is acquired outside the scope of his powers or duties, or when he is not acting for or on behalf of the corporation. In such a case, his knowledge is not imputable to the corporation. The same exception applies where the agent or corporate officer is dealing with his principal, in this case the corporation, in his own interest, which is adverse to that of his principal. 3 M. Wolf, *Fletcher Cyclopedia of Corporations, supra.*

Restatement (Second) of Agency § 279, at 608 states the latter exception as follows:

> The principal is not affected by the knowledge of an agent as to matters involved in a transaction in which the agent deals with the principal . . . as, . . . an adverse party.

Comment *d* of Restatement (Second) of Agency § 274, at 597 specifically rejects the general rule stated above in favor of the exception where the agent sells his own property to his principal: "In such cases the agent is not acting as agent in the transaction and therefore the principal may be a bona fide purchaser; . . ."

The Supreme Court of Washington has followed this exception to the general rule in two analogous situations. *Post v. Maryland Cas. Co.*, 2 Wn.2d 21, 97 P.2d 173 (1939) and *Kraft v. Spencer Tucker Sales, Inc.*, 39 Wn.2d 943, 239 P.2d 563 (1952).

It follows from what we have said that Hendricks failed to sustain the burden of proof that WDC, at least with respect to its innocent shareholder, Palmer,[4] was charged with notice of the restriction on Lewis' title at the time he transferred the property to WDC in August 1961. It is a well established principle that a subsequent taker from a good faith purchaser without notice takes all the rights of his grantor. *See Rehm v. Reilly*, 161 Wash. 418, 297 P. 147, 74 A.L.R. 350 (1931); 8 J. Grimes, *Thompson on Real Property* § 4315 (1963). Hence in the dissolution proceedings, WDC transferred its title to Palmer free from the burden of the restrictive covenant in Hendricks' lease. WDC was, and Palmer is, with respect to the property he received on dissolution, entitled to the protection of the recording statute.

We point out that any apparent equity favoring Hendricks over either Forstrom or Palmer disappears in light of the fact that it was Hendricks' failure to record his lease

---

[4] We need not determine the status of title to the property received by Lewis upon the dissolution of WDC.

and not Palmer's and Forstrom's failure to make inquiry outside of their chain of title which led to the present litigation.

Judgment reversed as to all defendants and remanded for entry of judgment dismissing the action and dissolving the injunction.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied December 11, 1974.

Review denied by Supreme Court February 26, 1975.