408 So.2d 735 (1982)
LIZA DANIELLE, INC., a Florida Corp., d/b/a Shoes R Us and Joseph Moriber, As Agent and Attorney-in-Fact for All the Beneficial Owners of Land Trust No. 5000018 Wherein City National Bank of Miami Is Trustee, Appellants,
v.
JAMKO, INC., a Florida Corp., d/b/a Shoe Bazaar, Appellee.
Nos. 80-2115, 80-2125.
District Court of Appeal of Florida, Third District.
January 12, 1982.
Rehearing Denied February 9, 1982.
*736 Abramson, Sazant, Diamond & Schwartz and Paula L. Schwartz, North Miami Beach, Meyer, Weiss, Rose, Arkin, Shampanier, Ziegler & Barash, Miami Beach, Julio C. Alonso, Miami, and Frederick J. Damski, Miami Beach, for appellants.
Howard W. Mazloff, Coral Gables, for appellee.
Before HUBBART, C.J., and HENDRY and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
By these consolidated appeals we are asked to review a final judgment of permanent injunction entered against appellants in the circuit court. Because the facts of this case fail to satisfy the rather strict legal requirements necessary to obtain a remedy other than that available in an action at law, we hold that the injunction was improvidently entered against appellants, and reverse.
Plaintiff-appellee Jamko, Inc., d/b/a Shoe Bazaar ("Jamko"), entered into a lease with appellant Joseph Moriber[1] for space in a warehouse merchandise mart.[2] The lease provided that lessee, Jamko, would use the premises solely for operation of a retail shoe store and contained the following "exclusivity" clause which is at the heart of this legal controversy: "Lessor shall not lease any other space in the warehouse to a retail shoe store." Subsequent to Jamko's entering into possession of the leased premises, a second warehouse building was constructed on the property, and one and a half years after Jamko executed its lease, appellant Liza Danielle, Inc., d/b/a Shoes R Us ("Danielle"), signed a lease for space in the second building and, some four months later, commenced operation therein as a retail shoe store. Jamko brought suit[3] seeking equitable relief and damages for injuries which it alleged were "immediate, continuing and irreparable," resulting from the lease to Danielle in contravention of Jamko's exclusive rights under its lease.
A non-jury trial was had at which the proofs centered around the issue of whether the exclusive provision was intended to apply to the second building, and the related inquiries as to what damages Jamko had suffered and what were its appropriate remedies. The court entered its final judgment of permanent injunction which provided, in summary, that: (1) Moriber be permanently enjoined from leasing any portion of the "Lakes Merchandise Mart located on N.W. 19th Street and East of State Road No. 7 (U.S. # 441)" as a retail shoe store; (2) Danielle be similarly enjoined from operating a retail shoe store; (3) City National Bank of Miami's motion for involuntary dismissal be granted; (4) plaintiff failed to prove its claim for damages; and (5) plaintiff recover its costs from defendants in the amount of $337.75.
The court's conclusions as to the legal issues underlying the injunctive order are set forth in the following excerpt from the trial transcript:

*737 "I want to tell you what my ruling is and how I reached the conclusion. As to the question of damages, I don't think they have been established with sufficient particularity. It's difficult. They don't have to be proven with exactness, but they do have to be established with some degree of certainty. I don't think it's possible for this Plaintiff to have accomplished it because, as has been pointed out by [counsel for Moriber] there are lots of factors that go into shopping center businesses, and those factors are just difficult, if not impossible, to correlate to the point where you can develop loss of business in a shopping center with that degree of certainty.
I think the law requires  I don't think your remedy at law is adequate, and I think you're entitled to one.
I think this clause that gives them the exclusive right to sell shoes applies to Warehouse West and Warehouse East.
Now, it's difficult for me to reconcile the fact that the two leases  that both say Warehouse Lease. The lease to the Plaintiff and the lease to Liza Danielle are both headed Warehouse Lease.
Now, it would seem consistent in the first lease, if there was no contemplation of the construction of Warehouse East, to have simply said in the attached addendum, Warehouse. It's a warehouse lease with a warehouse diagram; why Warehouse West, if it wasn't within somebody's contemplation at that time that there would be a Warehouse East?
I think that the testimony, credible testimony, the believable testimony, the testimony that is most consistent establishes that when this lease was prepared, it was contemplated that this Plaintiff have the exclusive right to sell shoes in this shopping center, which consists of Warehouse West and Warehouse East.
The problem that exists with Liza Danielle is an unfortunate one that I think can be resolved with an adequate remedy at law.
I'm going to enjoin the further sale of shoes in this particular shopping center by anyone other than Plaintiff."
Appellant Moriber raises two issues for our consideration: (1) the record does not support the trial court's finding that the exclusive clause of plaintiff's lease was intended by the parties to the lease to grant an exclusive as to both buildings, and (2) the court abused its discretion in granting an injunction where plaintiff had an adequate remedy at law which it failed to prove and where there was no showing of irreparable harm. Appellant Danielle's arguments are in line with Moriber's latter point. It contends that: (1) the trial court erred in ruling Jamko was without an adequate remedy at law and thus entitled to injunctive relief, and (2) it was error to grant Jamko injunctive relief against Danielle.
With regard to Moriber's first point, we have reviewed the record and found it to contain sufficient evidence to support the holding of the trial court upon this issue. It is well settled law that the trial judge's interpretation of a contract will not be disturbed on appeal unless it is clearly incorrect and unsupported by the evidence in the cause, Safeco Insurance Co. v. Rochow, 384 So.2d 163 (Fla. 5th DCA 1980); General Insurance Co. of America v. Sentry Indemnity Co., 384 So.2d 1305 (Fla. 5th DCA), pet. for rev. dism., 389 So.2d 1110 (Fla. 1980); Murphy v. Murphy, 370 So.2d 403 (Fla. 3d DCA 1979), or unless no valid legal basis exists for the conclusion reached as to the meaning of the ambiguous provision, Spurrier v. United Bank, 359 So.2d 908 (Fla. 1st DCA 1978); Posner v. Flink, 167 So.2d 259 (Fla. 3d DCA 1964). Sub judice, there was testimony, albeit contradicted, which supports the court's finding that the parties intended the exclusive to apply to whatever buildings were constructed on the property which now contains both warehouses.[4] The lease, by a fair reading of its *738 various provisions, also supports this interpretation. We therefore affirm the correctness of the court's interpretation of the lease and the exclusive covenant in question.
We are further unpersuaded by Moriber's contention, raised ancillary to his first point, that the court erred in failing to apply the proper legal standard of construction to the exclusive covenant. The rule of construction urged is that an ambiguous provision in a contract or, more particularly, in an exclusive clause in a commercial lease, is to be strictly construed against its drafter or the party for whose benefit it is inserted in the contract.[5],[6] While we are unable to determine from the record whether or not this standard was applied, in our view it is uncertain whether application of the standard would lead to the conclusion suggested by appellant, i.e., that the exclusive clause applied only to the one warehouse in which Jamko's store was located, and since the construction reached was, as previously stated, supported by the terms of the lease as well as by competent testimony (that which the court considered to be credible), we discern no error in this finding.
Having determined that no error has been shown in the court's finding that Jamko's exclusive covered both warehouse buildings, which finding is essential to plaintiff's cause of action under either an equitable or an at-law theory, we nonetheless conclude that the pleadings and proofs fail to present a proper case for redress by the extraordinary equitable remedy of injunction and that plaintiff should have been restricted to a purely legal remedy.
We are in agreement with the second point raised by appellant Moriber that the plaintiff failed to prove two interrelated requirements necessary to establish its right to injunctive relief: (1) that it was without an adequate remedy at law, or (2) that it would suffer irreparable harm if the injunction were denied.
Lack of an adequate remedy at law is a prerequisite for equitable relief, and furthermore, "an injunction will not lie where there is a choice between the ordinary processes of law and the injunction, the former being sufficient to furnish the full relief to which the complaining party is entitled." 29 Fla.Jur.2d, Injunctions § 17. On the other hand, however, it has been said that "in order to preclude pursuit of equitable remedies an available legal remedy must be plain, certain, prompt, speedy, sufficient, complete, practical, and efficient in attaining the ends of justice." 29 Fla. Jur.2d, Injunctions § 18. The second of these requirements, that of irreparable injury, has been defined as follows:
Irreparable injury is an injury of such a nature that it cannot be redressed in a court of law, or, as the rule has been otherwise stated, the injury must be of a peculiar nature, so that compensation in money cannot atone for it.
29 Fla.Jur.2d, Injunctions § 22 at 674-75.
We recognize that impossibility of ascertaining the amount of plaintiff's legal damages may establish inadequacy of the legal remedy so as to support an award of injunctive relief, Southern Colonization Co. *739 v. Derfler, 73 Fla. 924, 75 So. 790 (1917); 42 Am.Jur.2d, Injunctions § 40 at 780, and additionally, may establish the requisite irreparable character of the injury:
[A]n injury is irreparable where the damages are estimable only by conjecture, and not by any accurate standard. But mere difficulty in proving injury does not establish irreparable injury. One must distinguish between the difficulty of proving that an injury exists and the difficulty of measuring the amount or extent of a proven injury.
42 Am.Jur.2d, Injunctions § 49 at 790. However, Jamko's failure to prove its claim for legal damages as against its lessor, Moriber, may not be equated with inadequacy of its remedy at law or irreparableness of its injury, since it is clear from the record that the failure was due not to the impossibility of making such a determination, but rather to the minimal and insufficient effort made by plaintiff to prove its damages. The only evidence brought forth by Jamko on this issue was monthly State of Florida sales tax returns for the one year periods prior to and after the opening of Danielle's competing shoe store. While these reports purportedly showed a decrease of some $38,000 in Jamko's gross sales during the one year period covered in which Danielle was in business, Jamko's own witness testified that its lost profits could be anywhere in a range of from three to forty percent of that amount, and no further effort was made to establish the amount of this item of its actual legal damages. We would thus characterize Jamko's difficulties on this question as difficulty in proving that an injury existed, which according to the distinction recited, supra, does not constitute irreparable injury sufficient to invoke equitable relief.
In determining whether plaintiff's legal remedy, a major element of which would apparently be damages for lost profits, was sufficiently certain, prompt, complete and practical so as to preclude resort to injunctive relief, one factor which must be considered sub judice is the general rule, which is followed in Florida, that "[i]n order to recover lost profits, there must be an ongoing business with an established sales record and proven ability to realize profits at the established rate." Daytona MIGI v. Daytona Automotive Fiberglass, Inc., 388 So.2d 228, 232 (Fla. 5th DCA 1980); Conner v. Atlas Aircraft Corp., 310 So.2d 352 (Fla. 3d DCA 1975); Belcher v. Import Cars, Ltd., 246 So.2d 584 (Fla. 3d DCA 1971). Jamko had been operating its shoe store for nearly two years as of the time that Danielle opened its doors, so while it may not have been a well-established business, it was, on the other hand, not new either. On remand plaintiff will have the burden of establishing the amount of its actual loss of profits, if any.[7] It may meet this burden by introducing competent proof of its income and expenses for a reasonable time anterior to the opening of Danielle's store, Belcher v. Import Cars, Ltd., supra.
An additional factor supporting our conclusion that Jamko had an adequate remedy at law which it failed to prove and to which it should be restricted is that the plaintiff entirely ignored one relevant measure of damages available to it, i.e., the diminution in value of its leasehold with the exclusive covenant broken, as compared to its value with the exclusive unbroken, which damages may be allowed as a set-off against rental payments due the lessor under the terms of the lease. See Fontainbleau Hotel Corp. v. Crossman, 323 F.2d 937 (5th Cir.1963); Annot. 97 A.L.R.2d 111-113 (1964).
*740 The two measures of damages which we have outlined should serve to adequately compensate the plaintiff for legal damages which it may, on remand, prove that it has sustained, or will sustain during the term of its lease in which Danielle has operated, and continues, pursuant to this opinion, to operate its shoe store in competition with Jamko. Since the recovery available to plaintiff in an action at law would include, if proven, damages for future injury, it will not be necessary for Jamko to seek relief through multiple lawsuits, prevention of which is a basic ground for equitable relief. Pensacola & A.R. Co. v. Jackson, 21 Fla. 146 (1884); see generally, 42 Am.Jur.2d, Injunctions § 50.
Perhaps the most compelling reason for our conclusion that it was error to grant an injunction under the facts of this case is the harsh effect of this remedy upon Danielle, who, the proofs strongly suggest, may be characterized as an innocent subsequent lessee without notice of Jamko's exclusive.[8] The obvious inequity of forcing Danielle to close down its business, which had been operating for one year at the time of trial, is borne out by cases from several jurisdictions which have held that enforcement of an exclusive clause in a commercial lease by injunction is improper where it would operate harshly against an innocent third-party without notice: Hendricks v. Lake, 12 Wash. App. 15, 528 P.2d 491 (Wash. Ct. App. 1974); Buckaway v. J-Town Center, Inc., 475 S.W.2d 642 (Ky. 1972); Baron v. Crossroads Center of Iowa, Inc., 165 N.W.2d 745 (Iowa 1969); Wolfe v. North Shreveport Development Co., 228 So.2d 148 (La. App. 1969), writ refused, 225 La. 159, 229 So.2d 736 (1970); Annot. 97 A.L.R.2d 88-90 (1964). The legal basis for the result in these cases is found in the equitable principle of balancing the relative conveniences of the parties. The rule, as stated in 29 Fla.Jur.2d, Injunctions § 23 at 676, is that:
equity will not require by injunction the performance of an act where the harm to the person coerced is wholly disproportionate to the benefit to the other party, or, indeed, when greater injury and inconvenience will result to the defendant from an injunction than will be caused to the plaintiff by its refusal.
In applying this rule to the facts of the instant case, the nature of the injunction entered against Danielle is of some significance. Danielle was required to cease operating its shoe store at the location leased from Moriber, thus the injunction against Danielle has the characteristics of a mandatory injunction, i.e., one which "goes beyond a mere restraint and commands acts to be done or undone." 29 Fla.Jur.2d, Injunctions § 6 at 659. It has been stated that "[i]n view of the drastic character of mandatory injunctions, the rule about balancing the relative conveniences of the parties applies with special force where mandatory injunctive relief is sought." 29 Fla.Jur.2d, Injunctions § 24 at 676-77. Because the record reflects a total absence of consideration of the effect of entry of the injunction against Danielle, we conclude that this stringent requirement of balancing the relative conveniences of the parties where mandatory relief is concerned has not been met. The trial court committed reversible error in enjoining Danielle's business operation under the circumstances presented. And since the only relief sought by plaintiff against Danielle was injunctive in nature, judgment should be entered on remand against the plaintiff and in favor of Danielle, and Danielle should further be allowed to pursue its cross-claim for damages against appellant Moriber. Moreover, since the effect of upholding the injunction against the lessor, Moriber, would be to enforce it against the subsequent lessee, Danielle, against whom it is not enforceable, the injunction entered against Moriber is improper and must likewise be reversed. *741 Skaggs v. Jensen, 94 Idaho 179, 484 P.2d 728 (1971).
Accordingly, the order granting the injunctions is reversed and the cause is remanded with directions to vacate the order and to conduct further proceedings in conformity with this opinion. On remand plaintiff may bring forth all evidence which bears upon the count in its complaint for legal damages against its lessor, appellant Moriber.
Affirmed in part, reversed in part, and remanded with directions.
NOTES
[1] Moriber executed the lease "as Agent and Attorney-in-Fact for all of the Beneficial Owners of Land Trust # 5000018 wherein City National Bank of Miami is Trustee (Lessor)[.]"
[2] The leased premises are described in paragraph 1 of the lease as follows:

"1. DEMISED PREMISES: (a) Lessor leases to Lessee and Lessee rents from Lessor those certain premises, as part of now or hereafter to be erected in the Warehouse Center (hereinafter referred to as "Warehouse"), located at N.W. 19th Street and E. of 441, City of Lauderdale Lakes, State of Florida, which premises are more particularly described as follows:
3993, 3995, 3997 and 3999 N.W. 19th Street, Lauderdale Lakes, Florida. A store having a frontage of 48'8" ..."
(Exhibit "A" to the lease is a diagram of the general layout of the warehouse depicting one building, labelled "Warehouses West[.]"
[3] The complaint, which originally named only City National Bank of Miami, as Trustee of Land Trust No. 5000018, and Liza Danielle, Inc., as defendants, was amended to include Moriber as agent and attorney-in-fact for the beneficial owners of said Land Trust, as an additional defendant. City National Bank of Miami was granted an involuntary dismissal and is not a party to this appeal.
[4] Neither of the appellants complain about, nor do we find to be improper, the court's consideration of extrinsic evidence in addition to interpreting the language of the lease itself, in order to determine what premises were intended by the parties to be covered by the ambiguous language of the exclusive clause ("Lessor shall not lease any other space in the warehouse to a retail shoe store." (e.s.) The following cases have affirmed the propriety of consideration of all available, appropriate, parol or other extrinsic evidence in order to ascertain the true intent of the parties where the language of their agreement is ambiguous: Morton v. Morton, 307 So.2d 835 (Fla. 3d DCA), cert. denied, 324 So.2d 90 (Fla. 1975); Royal American Realty, Inc. v. Bank of Palm Beach and Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968); see also Pickren v. United States, 378 F.2d 595 (5th Cir.1967); Adler v. Nicholas, 381 F.2d 168 (5th Cir.1967); Bal Harbour Shops, Inc. v. Greenleaf & Crosby Co., Inc., 274 So.2d 13 (Fla. 3d DCA 1973); 11 Fla.Jur.2d, Contracts § 117.
[5] 11 Fla.Jur.2d, Contracts § 106.
[6] E.g., Norwood Shopping Center, Inc., v. MKR Corp., 135 So.2d 448 (Fla. 3d DCA 1961) (lessor's covenant not to lease retained property for purpose of conducting business in competition with lessee must be strictly construed, since it is in restraint of trade). Accord: Reed v. O.A. & E., Inc., 390 So.2d 487 (Fla. 4th DCA 1980); Winter Park Appliance Center, Inc., v. Walling Crate Co., 196 So.2d 198 (Fla. 2d DCA 1967).
[7] Conner v. Atlas Aircraft Corp., 310 So.2d 352, 354 (Fla. 3d DCA 1975), sets forth the applicable standard of proof for establishing lost profits as an element of plaintiff's legal damages, as follows:

Such damages are recoverable if the loss of prospective profits is the natural result of the wrong and the amount can be established with reasonable certainty. The standard for the degree of certainty requires that the mind of a prudent impartial person be satisfied with the damages... However, uncertainty as to the amount of damages or difficulty in proving the damages will not prevent recovery if it is clear that substantial damages were suffered as a result of the wrong. Inability to give the exact or precise amount of damages does not preclude recovery so long as there is a reasonable basis in the evidence for the amount awarded.
[8] Testimony was heard on this issue, however, the court ultimately found that notice was not material to plaintiff's case and the issue would be more appropriately addressed in Danielle's action for damages against Moriber. Danielle's crossclaim for damages against its lessor, Moriber, was dismissed prior to trial by stipulation of counsel, without prejudice to refile same following conclusion of the litigation with Jamko.